**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:21-CR-72** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **IVAN LEDEE,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Defendant Ivan Ledee moves to suppress evidence obtained during the search of 1418 Swatara Street made pursuant to a search warrant on April 3, 2020. For the following reasons, we will deny Ledee's motion.

I.   **<u>Factual Background & Procedural History</u>**[1]

On April 1, 2020, Harrisburg Police Department Detective Dennis Simmons applied for a search warrant for 1418 Swatara Street in Harrisburg, Pennsylvania. (<u>See</u> Doc. 41-3). The affidavit of probable cause first recounts Detective Simmons' experience with narcotics investigations and undercover operations. (<u>See id.</u>) It also avers he has been involved in applying for and executing more than 100 search warrants related to drugs. (<u>See id.</u>) The affidavit then outlines the facts related to probable cause, relaying that Detective Simmons began an investigation into drug sales, specifically "crack cocaine and marijuana" from the 1418 Swatara Street

---

[1] The following factual narrative derives from the facts articulated in Ledee's motion to suppress and the government's opposition, (<u>see</u> Doc. 41 at 1-5; Doc. 45 at 2-6), as well as the application for search warrant and attached affidavit of probable cause submitted by Ledee, (<u>see</u> Doc. 41-3), and the law enforcement incident report form submitted by the government, (<u>see</u> Doc. 45-2).

address in December 2019.  (See id.)  On December 10, 2019, he received

information from a confidential informant ("CI"), who stated that "a Hispanic male

known as 'Vic'" lived there, and regularly sold both crack cocaine and marijuana

from the residence, utilizing "the front or west side doors" for transactions.  (See

id.)  The CI also noted Vic threatened customers and rivals with firearms—

specifically, "at least one 9mm handgun" as well as a ".223 caliber rifle."  (See id.)

Per the CI, Vic was a native of Puerto Rico and had only recently moved to the

Harrisburg area.  (See id.)

    The day after receiving this information, Detective Simmons conducted a

trash pull of garbage bags "placed on a sidewalk directly in front of" 1418 Swatara

Street.  (See id.)  Upon examining their contents, Detective Simmons noted the

presence of "multiple ripped plastic sandwich baggies . . . consistent with packaging

cocaine for sale."  (See id.)  The garbage bags also contained mail addressed to an

individual named Shabella Santiago of 1418 Swatara Street.  (See id.)

    Over the next three months, two more CIs conveyed information to Detective

Simmons about 1418 Swatara Street.  (See id.)  The CIs provided information on a

Hispanic male they knew as "Gordo" who reportedly sold crack cocaine and

marijuana from the residence.  (See id.)  Both CIs relayed that Gordo "always

carries some kind of handgun."  (See id.)  According to Detective Simmons, these

CIs were "independent from one another and reliable."  (See id.)

    Detective Simmons conducted a second trash pull in March 2020, again

retrieving garbage bags "on a sidewalk directly in front of the residence."  (See id.)

This second trash pull, which occurred in "the last 48 hours" before the warrant

application, yielded "a large ripped vacuum sealed plastic bag with the letters 'OG'
written on it." (See id.)  The bag emitted a "strong odor of marijuana" and the
packaging was consistent, based on Detective Simmons' training and experience,
with the sale of "large amounts of marijuana." (See id.)  The trash also contained
"an empty box of 'Federal' brand 9mm pistol ammunition," as well as letters to a
Taisha Ruiz at 1418 Swatara Street. (See id.)

The affidavit closes by requesting a search warrant, stating the trash-pull
evidence is "consistent with the information given by (3) independent and reliable
informants." (See id.)  Detective Simmons applied to search the "entire interior
and curtilage of 1418 Swatara Street, Harrisburg, PA." (See id. at 1).

Magisterial District Justice Sonya McKnight issued the warrant on April 1,
2020. (See Doc. 41 ¶ 3).  The warrant authorized law enforcement to search for and
seize the following items: "crack cocaine, marijuana and any illegal narcotics.  Any
drug paraphernalia.  Any monetary proceeds from drug sales.  Any written records
of drug sales and proof of ownership.  Any illegal firearms and/or firearms
accessories." (See id.)  On April 3, law enforcement executed the search warrant on
1418 Swatara Street. (See id.)  Officers seized, inter alia, heroin, marijuana,
glassine baggies, several 9mm firearms and firearm parts, ammunition, and around
$1,900 cash. (See Doc. 45-1 at 4; Doc. 45-2 at 9).

In March 2021, a federal grand jury returned a four-count indictment
charging Ledee with possession with intent to distribute heroin and fentanyl in
violation of 21 U.S.C. § 841(a)(1) (Count 1); possession of firearms in furtherance of
drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2); possession of a

machine gun in violation of 18 U.S.C. § 922(o) (Count 3); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 4). Ledee pled not guilty and now moves to suppress evidence from the search of 1418 Swatara Street. The motion is fully briefed and ripe for disposition.

## II.    <u>Discussion</u>

The Fourth Amendment requires searches and seizures to be reasonable, and all warrants to be supported by probable cause. <u>See</u> U.S. CONST. amend. IV; <u>Horton v. California</u>, 496 U.S. 128, 133 (1990). When searching a home, the constitutional default is that a warrant is required. <u>See</u> <u>Payton v. New York</u>, 445 U.S. 573, 586 & n.25 (1980) (citations omitted). To issue a search warrant, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>United States v. Stearn</u>, 597 F.3d 540, 559 (3d Cir. 2010) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)). Courts reviewing these determinations do not make a *de novo* probable cause assessment; they only need "ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." <u>See</u> <u>United States v. Miknevich</u>, 638 F.3d 178, 182 (3d Cir. 2011) (alteration in original) (quoting <u>Gates</u>, 462 U.S. at 238-39).

The Supreme Court of the United States views probable cause as an amorphous concept, "not readily, or even usefully, reduced to a neat set of legal rules." <u>See</u> <u>Ornelas v. United States</u>, 517 U.S. 690, 695-96 (1996) (quoting <u>Gates</u>, 462 U.S. at 232). Its existence must be determined from the view of the officer on the

street, not the judge in the courtroom.  See United States v. Sokolow, 490 U.S. 1, 7-8 (1989); see also United States v. Cortez, 449 U.S. 411, 418 (1981).  Whether probable cause exists is an objective determination based on the totality of the circumstances present at the time of the challenged governmental conduct.  See United States v. Williams, 413 F.3d 347, 353 n.6 (3d Cir. 2005).  Probable cause "is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014).

Ledee argues that the search warrant authorizing the search of 1418 Swatara Street was unsupported by probable cause.  He also contends that the good-faith exception does not apply.  We disagree on both fronts.

### A.  Probable Cause

#### 1.  *CI Reliability*

Ledee mainly challenges the credibility of informants relied upon by Detective Simmons in his affidavit.  Statements by informants, unlike statements by law enforcement officers, are "not presumed to be credible."  See United States v. Yusuf, 461 F.3d 374, 384 (3d Cir. 2006).  Accordingly, the magistrate may approve a warrant "relying primarily or in part" on CI statements, "so long as the totality of the circumstances gives rise to probable cause."  See Stearn, 597 F.3d at 555.  This analysis may rely upon any indicia of reliability, including the veracity of the informant's statements, the basis of the informant's knowledge, and any corroborating police investigation, to find the existence of probable cause.  See id. (citing Gates, 462 U.S. at 230, 233, 241).

Upon review of the affidavit, we conclude that a magistrate could credit the statements of the three CIs because Detective Simmons' independent investigation

corroborated them.  See id.  In December 2019, a CI relayed specific information about drug sales at 1418 Swatara Street, noting a Hispanic male with an alias of Vic frequently sold crack cocaine and marijuana out of the residence's "front or west side doors."  (See Doc. 41-3).  It was reasonable to infer the CI was well-acquainted with this operation, as they were able to relay not only which doors Vic used to conduct transactions and the fact that Vic threatened customers and rivals with firearms, but also could state the exact type of firearms Vic used—namely, a 9mm handgun and .223 caliber rifle.  (See id.)  Detective Simmons' independent trash pull in December corroborated the CI's tip, yielding "multiple ripped plastic sandwich baggies . . . consistent with packaging cocaine for sale."  (See id.); see also United States v. Miller, 134 F. App'x 531, 533 (3d Cir. 2005) (nonprecedential) ("reasonable to infer that drug dealers might use corners of sandwich bags to package their product").  Furthermore, Detective Simmons' second trash pull yielded an empty box of 9mm ammunition corroborating the informant's description of Vic's handgun.

Between December 2019 and March 2020, two additional CIs came forward, specifying that a Hispanic male (this time known as "Gordo") sold crack cocaine and marijuana from the residence.  (See id.)  The CIs related Gordo "always carries some kind of handgun on his person."  (See id.)  Following these tips, Detective Simmons' second trash pull yielded a "ripped vacuum sealed plastic bag" that exuded a strong odor of marijuana, as well as the aforementioned empty box of ammunition for a 9mm firearm.  (See id.)  This evidence further substantiated the CI information.  In sum, Detective Simmons' independent police investigation

permitted the magistrate to fairly conclude that these informants were all familiar with the drug trafficking allegedly occurring at 1418 Swatara Street, and thus consider them credible and reliable.  See Stearn, 597 F.3d at 555.

        **2.**    ***Staleness***

Ledee also maintains the information from the tip and trash pull in December 2019 were stale at the time of the warrant application in April 2020. Probable cause can cease to exist if the information in an affidavit becomes outdated.  See United States v. Zimmerman, 277 F.3d 426, 434 (3d Cir. 2002).  The age of the information, however, is not dispositive, and must be analyzed together with the "'nature of the crime and the type of evidence.'"  See id. (quoting United States v. Tefhe, 722 F.2d 1114, 1119 (3d Cir. 1983)).  If the affidavit avers facts indicating a "course or pattern of ongoing and continuous" criminal acts, the information's age becomes less important.  See United States v. Urban, 404 F.3d 754, 774-75 (3d Cir. 2005) (citations omitted); United States v. Henley, 941 F.3d 646, 653 (3d Cir. 2019) (citing Urban, 404 F.3d at 774).  Stale information can also be "refreshed with newer information that relates back to the subject of the older information."  See United States v. Cintron, 243 F. App'x 676, 679 (3d Cir. 2007) (nonprecedential) (citing Tehfe, 722 F.2d at 1120).

Viewed in context, we do not consider the information from the December 2019 CI or subsequent trash pull to be stale.  Initially, we note that the CI communicated information about drug trafficking, averring that a Hispanic male sold both crack cocaine and marijuana from the residence "regularly," and threatened customers and rivals alike with at least two types of firearms.  (See Doc.

41-3). This information suggests that criminal activity was ongoing, rendering the age of the information less important in our analysis. See Urban, 404 F.3d at 774-75. Furthermore, while Ledee makes much of the December-to-April gap, our court of appeals has upheld search warrants pursuant to drug trafficking with longer gaps in time. See United States v. Ritter, 416 F.3d 256, 263 (3d Cir. 2005) (probable cause found despite seven-month lapse between aerial observation of marijuana plants and anonymous tips about grow operation). And here, the second and third CIs independently "refreshed" information derived from the December 2019 tip and trash pull because their subsequent tips "related back to" the same subject: a Hispanic male trafficking marijuana and crack cocaine from 1418 Swatara Street who used firearms to conduct business. See Cintron, 243 F. App'x at 679. We therefore conclude the information from the 2019 tip and trash pull was not stale at the time of the warrant application.

   3.   *Trash-Pull Evidence*

   Ledee finally contends that the evidence obtained from Detective Simmons' trash pulls is insufficient to establish probable cause. Because our court of appeals has not squarely addressed the probative value of trash-pull evidence in a precedential opinion, we resort to persuasive precedent for guidance. Our review of this precedent reveals a common theme: trash-pull evidence is generally sufficient when proffered *in combination with* other facts, such as informant tips, police surveillance, or a defendant's prior convictions. See, e.g., United States v. Briscoe, 317 F.3d 906, 908 (8th Cir. 2003) (collecting cases); United States v. Abernathy, 843 F.3d 243, 251-52 (6th Cir. 2016) (same); United States v. Carswell, 996 F.3d 785, 793

8

(7th Cir. 2021) (probable cause found due to informant tip, prior drug history, and trash-pull evidence); <u>United States v. Jenkins</u>, 819 F. App'x 651, 661 (10th Cir. 2020) (nonprecedential) (trash-pull evidence plus information on defendant's ongoing drug prosecution); <u>United States v. Montieth</u>, 662 F.3d 660, 665 (4th Cir. 2011) (tip from ATF agent plus trash-pull evidence). However, trash-pull evidence standing *alone* may or may not support probable cause depending on the type and quantity of drugs at issue as well as the number of trash pulls. See <u>Briscoe</u>, 317 F.3d at 907-08 (trash pull alone sufficient, since number of marijuana stems and seeds indicated "ongoing marijuana consumption or trafficking is occurring"); <u>United States v. Leonard</u>, 884 F.3d 730, 735 (7th Cir. 2018) (two trash pulls yielding objects that "tested positive for cannabis" sufficient); <u>see also</u> <u>United States v. Morales</u>, 987 F.3d 966, 972 (11th Cir. 2021) (collecting cases but declining to resolve if two trash pulls sufficient); <u>but see</u> <u>United States v. Lyles</u>, 910 F.3d 787, 794 (4th Cir. 2018) (standing alone, single trash pull revealing three marijuana stems and rolling papers not sufficient); <u>Abernathy</u>, 843 F.3d at 257 (same for trash pull yielding a few marijuana roaches and baggies).

Persuasive authority from our court of appeals also makes clear that trash pulls can yield valuable corroborating evidence. See <u>United States v. Harris</u>, 118 F. App'x 592, 593-94 (3d Cir. 2004) (nonprecedential); <u>Miller</u>, 134 F. App'x at 533. In <u>Harris</u>, two trash pulls conducted roughly two weeks apart—both of which revealed drug-related evidence—together with surveillance of the residence and information on defendant's drug-arrest history, established a substantial basis that probable cause existed. See <u>Harris</u>, 118 F. App'x at 593-94. Six months later, in <u>Miller</u>, the

court validated a magistrate's issuance of a search warrant based on complaints from neighbors of suspected drug activity, the defendant's previous drug-related arrests, and evidence from a single trash pull containing indicia of residency and evidence of controlled substances.  See Miller, 134 F. App'x at 533-34.  District courts within our circuit have also sanctioned search warrants in analogous circumstances.  See, e.g., United States v. Jackson, No. 18-217, 2019 WL 1116913 (W.D. Pa. Mar. 11, 2019); Lockhart v. City of Easton, No. 12-0133, 2013 WL 5225234 (E.D. Pa. Sept. 17, 2013), aff'd, 588 F. App'x 144 (3d Cir. 2014) (nonprecedential); Gulley v. Haymaker, No. 06-131J, 2009 WL 763549, at *7-8 (W.D. Pa. Mar. 23, 2009); but see United States v. Ray, No. 1:19-CR-316, 2020 WL 6544840, at *4-5 (M.D. Pa. Nov. 6, 2020) (Conner, J.) ("inconsiderable evidence of marijuana" from single trash pull insufficient to establish probable cause).

In this matter, Ledee attacks the trash-pull evidence on two fronts.  He first attempts to distance the trash from the residence, emphasizing the residence's location near a bar, and noting that Detective Simmons did not retrieve the bag from a garbage can.  Ledee elsewhere argues the December 2019 tip and trash pull should not be viewed in conjunction with the March 2020 tip and trash pull because the indicia of residence recovered from the trash pulls produced different names: Shabella Santiago in December 2019, and Taisha Ruiz in March 2020.  (See Doc. 42 at 8).  The problem with Ledee's piecemeal approach is that it fails to consider the totality of the circumstances as contained within the four corners of the affidavit. See Williams, 413 F.3d at 353 n.6.  Despite the absence of a marked garbage can, the letters within each trash pull tied the recovered items to 1418 Swatara Street.  (See

Doc. 41-3).  Moreover, that these items bore different names is of little consequence, because Detective Simmons' warrant does not identify an individual target by name.  It is beyond peradventure that "search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found."  See Urban, 404 F.3d at 774 (quoting Zurcher v. Stanford Daily, 436 U.S. 547, 553-560 (1978)).  Both tips referred to a Hispanic male trafficking narcotics and carrying a firearm at the 1418 Swatara Street property; both trash pulls—including one within 48 hours of the search warrant application—yielded mail sent to that address and evidence of drug trafficking.  The affidavit therefore contained not merely trash-pull evidence, but trash-pull evidence *corroborating* the CI tips to Detective Simmons.  Such a showing is sufficient for a finding of probable cause under authority from our own and other courts of appeals.  See Harris, 118 F. App'x at 593-94; Miller, 134 F. App'x at 533-34; Briscoe, 317 F.3d at 908; Abernathy, 843 F.3d at 251-52.

Based on our review of the affidavit of probable cause, as well as the case law on CI reliability, staleness, and trash-pull evidence, we are confident the magistrate here "had a substantial basis for . . . concluding that probable cause existed."  See Miknevich, 638 F.3d at 182 (alteration in original) (quoting Gates, 462 U.S. at 238-39).  Given the threshold for a probable cause determination, and our deference to the magistrate's findings, Ledee has failed to establish that the warrant for 1418 Swatara Street was unsupported by probable cause.  See Kaley, 571 U.S. at 338; Gates, 462 U.S. at 238-39.

### B.    Good-Faith Exception

Assuming *arguendo* that the warrant lacked sufficient probable cause, we conclude that the good-faith exception to the exclusionary rule applies.  Under this exception, courts will not suppress evidence obtained through a subsequently invalidated search warrant if officers acted in good faith, that is, "in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." United States v. Leon, 468 U.S. 897, 918 (1984); see Stearn, 597 F.3d at 560 (quoting Leon, 468 U.S. at 918).  The test is "whether a reasonably well trained officer would have known that the search was illegal despite the [judge's] authorization."  United States v. Hodge, 246 F.3d 301, 307 (3d Cir. 2001) (quoting United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999) (quoting Leon, 468 U.S. at 922 n.23)).

Our court of appeals has recognized "rare" exceptions to this rule, including when an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  See United States v. Pavulak, 700 F.3d 651, 664 (3d Cir. 2012) (quoting Stearn, 597 F.3d at 561 & n.19 (internal quotation marks and citations omitted)).  For example, an affidavit that contains "mere conclusory assertions or a single piece of evidence" may render an officer's reliance on the warrant unreasonable.  See United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993); see also Loy, 191 F.3d at 368 (same for "'bare bones' affidavit . . . lacking factual support").  Accordingly, a defendant seeking to establish this

exception faces a high bar.  See Pavulak, 700 F.3d at 664 (quoting Messerschmidt v. Millender, 565 U.S. 535, 547 (2012)).

In the matter *sub judice*, Ledee argues that because Detective Simmons caused the purported deficiencies in the affidavit, his subsequent search of the residence could not have been in good faith.  (See Doc. 42 at 9-10).  However, our court of appeals does not recognize "a new exception to good faith based entirely on the identity of the executing officer."  See Pavulak, 700 F.3d at 665.  Detective Simmons also submitted substantially more than a bare bones affidavit or conclusory assertions.  See Williams, 3 F.3d at 74; Loy, 191 F.3d at 368.  He provided information from five separate sources—three CIs and two trash pulls—for the magistrate judge's consideration.  (See Doc. 41-3).  Particularly in light of the limited guidance from our court of appeals on the sufficiency of trash-pull evidence, we conclude Detective Simmons held an objectively reasonable belief in the validity of the April 2020 warrant.  See Hodge, 246 F.3d at 309 (officer's reliance on warrant was justified given the "unsettled jurisprudence governing cases of this type"); see also Pavulak, 700 F.3d at 664 (officer's reliance was justified given unsettled law in circuit at the time of affidavit's filing and competing out-of-circuit views); Ray, 2020 WL 6544840, at *6-7 (same).  Ledee has not cleared the high bar to overcome the good-faith exception, see Pavulak, 700 F.3d at 664, and we alternatively conclude that the good-faith exception to the exclusionary rule applies to the search warrant for 1418 Swatara Street.

**III.**   <u>**Conclusion**</u>

We will deny Ledee's motion to suppress evidence as he has failed to show a

Fourth Amendment violation.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    June 21, 2022